VIRGIL JOHN ETCHIESON V. STATE

No. 35,139.   November 7, 1962

*J. J. Fagan, Duke & Melton*, Dallas, for appellant.

*Henry Wade*, Criminal District Attorney, Dallas, and *Leon Douglas*, State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is the unlawful possession of a narcotic drug, marijuana; the punishment, twenty-five years in the penitentiary.

The evidence shows that Dallas police officers, pursuant to a search warrant, entered an apartment in which appellant was present as a guest; that the apartment was rented by two girls, Billie Yvonne Coleman and Donnie Ray Stringfellow Ogle. We shall not here relate further details other than to state that the officers did retrieve a vial from appellant containing what was later chemically established to be marijuana of sufficient quantity to make one large or two small cigarettes.

Appellant has brought forward for our consideration nine (9) formal bills of exception. The first four pertain to the validity of the search warrant and to evidence obtained from such search and seizure at the apartment. Since the appellant was definitely shown by the evidence, including his own testimony, to be a guest or visitor and not a resident of the apartment, he has no standing to question the validity of the search and seizure or the evidence obtained from such search and seizure. This is a privilege to be exercised only by the one in lawful possession of the premises searched. Rubens v. State, 166 Texas Cr. Rep. 71, 311 S.W. 2d 242; Paige v. State, 161 Texas Cr. Rep. 571, 279 S.W. 2d 344. These four contentions are without merit and are overruled.

Appellant's bills of exception 5, 6, 7, and 8 complain of the action of the trial court in admitting certain judgments showing appellant and defense witness, Billie Yvonne Coleman, to have been previously convicted in several causes in two justice of the peace courts in Dallas County of the offense of vagrancy. Appellant's principal objection to the admissibility of these judgments was that the state failed to establish the identity of the appellant and the witness Coleman as being the same persons as set forth in these judgments. The state has ably briefed the question and has pointed out many authorities to sustain its position that these judgments were admissible. We have diligently reviewed the record. We shall set forth all of the evidence adduced by both the state and the appellant with references to these prior convictions.

The following testimony was adduced by the state upon cross-examination of the witness, Billie Yvonne Coleman:

"Q. Yvonne, I will ask you whether or not you are the same Billie Yvonne Coleman that was convicted in Cause No. 2268, in Judge Glen Byrd's Court, on June 23, 1959, for the offense of vagrancy, to-wit, then and there being a common prostitute? * * * A. No, I have never been in Glen Byrd's Court."

The question was restated, as follows:

"Q. Were you convicted in Cause No. 2268 on June 23rd of 1959, of being then and there a common prostitute for the offense of vagrancy?" The witness replied: "No."

The record reflects several objections by appellant's counsel at this juncture, among them being that it was not a proper ques-

tion and that this was not the best evidence. The court overruled the objections and then inquiry was made of this witness about another offense. The state asked:

"Q. All right. Are you the same Billie Yvonne Coleman that in Cause No. 2274 in Judge Glen Byrd's Court, was convicted of the offense of vagrancy, to-wit, being then and there a common prostitute?"

Objection was then taken in the form of a general objection, with the statement by appellant's counsel:

"Shall we just have a full bill to this, so that we won't have to object to each question?"

The court responded: "Yes."

This line of questioning continued as to several other offenses of vagrancy, the witness responding that she had not been convicted and had never pleaded guilty.

The appellant, while a witness in his own behalf, was then asked upon cross-examination if he had pleaded guilty of the offense of vagrancy, to-wit, associating with and receiving aid from known prostitutes, on several occasions in two different J. P. courts. Objections were taken, overruled, and the witness denied the prior convictions.

The state then adduced testimony from the witness George Hamilton, the clerk of Justice of the Peace McBride's court, over objections by the appellant. The question was asked:

"Q. All right, the judgment shows a conviction for what offense?"

The answer was: "Vagrancy."

Further, the state inquired:

"Q. All right, does it show there which subsection of the vagrancy statutes Virgil John Etchieson was filed on for? A. Not here, no sir."

"Q. Does that show on this *pink complaint* here? A. Yes." (Emphasis, supplied.)

The state then inquired about another prior conviction for the offense of vagrancy, and the witness Hamilton replied that the judgment reflected that the defendant's name was Virgil John Etchieson and that he pleaded guilty to the offense of vagrancy. The state then inquired of the witness Hamilton about several offenses of vagrancy involving a person by the name of Billie Yvonne Coleman. It is shown from the record that the question asked by the state was, in effect, if the judgment reflected that she was convicted of the offense of vagrancy, and the witness replied: "Yes, sir." This witness testified that he had never seen the appellant and that he did not know Billie Yvonne Coleman.

Evidence was then adduced by the state from the witness Mrs. Evelyn Smith, shown to be the clerk of Judge Glen Byrd's court. Mrs. Smith was first asked about a judgment showing a conviction against a defendant by the name of Virgil John Etchieson, the question asked being: "And the offense?" to which question she replied: "Vagrancy." The state then inquired:

"Q. All right, by looking at that can you tell what section of the vagrancy statute the case was filed under? A. No, sir."

"Q. You would have to look in the jacket, is that correct? A. Yes, sir."

The state then apparently attempted to introduce a slip or something to more specifically show the subsection of the vagrancy statute, for the state's counsel stated: "We wish to offer this to show the subsection." Objection was then taken by appellant and sustained by the court. This witness was then asked about another judgment:

"Q. All right. How about 7131? A. Billie Yvonne Coleman."

"Q. Does the judgment show a conviction on her? A. Yes, it does."

"Q. And the offense please? A. Vagrancy."

The state then made inquiry about two other judgments showing convictions for the offense of vagrancy, involving a defendant by the name of Billie Yvonne Coleman, and the witness responded that the judgment records disclosed convictions for the offense of vagrancy. This witness also testified that she did not know either the appellant or Billie Yvonne Coleman.

The appellant then developed testimony showing that there were two Virgil John Etchiesons in Dallas County.

While there may be merit in viewing this case from the standpoint of the admissibility or inadmissibility of the evidence relating to the prior convictions, as briefed by the appellant and the state, on the question of whether or not it was necessary to identify the appellant and the witness, we think that, properly, these prior convictions for the offense of vagrancy should be viewed and tested by the rules of admissibility of evidence showing prior convictions for offenses involving moral turpitude. The closest the state came to showing any subsection of the vagrancy statute was the reference by the witness Hamilton to the "pink complaint", but the "pink complaint" was not entered in the evidence, and it is not before us. The line of questioning pursued by the state, at the time questions were being asked appellant and the witness Coleman, was framed in such manner as to elicit the desired and necessary information to show the subsection of the vagrancy statute, for the state did inquire if the judgment showed a conviction for the offense of vagrancy, to-wit: being then and there a common prostitute, and for the offense of vagrancy, to-wit: associating with and receiving aid from known prostitutes. These questions were actually suggestive, opinionated, conclusive questions, but they were answered in the negative.

At no other place in the entire testimony in its effort to impeach these witnesses did the state show any prior convictions for any offenses other than vagrancy.

The vagrancy statute is set forth as Art. 607, V.A.P.C. This statute states that "The following persons are and shall be punished as vagrants, viz. * * * ," and then lists twenty-one (21) distinct categories or sections by way of classifying the persons amenable to this act, among them being persons known as tramps, persons leading an idle, immoral, or profligate life, who have no property to support them, and who are able to work and do not work; persons able to work who have no visible means of support; habitual loafers and loiterers, persons trading or bartering stolen property; every common gambler, gypsies, beggars, every common prostitute, every able-bodied person who lives without employment or labor, and who has no visible means of support. And then, after enumerating three other categories, the statute sets out:

"All male persons who habitually associate with prostitutes, or habitually loiter in or around houses of prostitution, or who,

without having visible means of support, receive financial aid or assistance from prostitutes."

This statute then enumerates in the four subsequent sections additional acts involving prostitution and prostitutes, and defines "prostitution".

45 Texas Jur. 104, Section 243, states that crimes that involve moral turpitude, so as to make a conviction or charge of them available as impeaching matter, include the following offenses: any felony; *keeping a disorderly house, being a common prostitute, or being an inmate of a house of ill-fame,* and other enumerated offenses.

This court held in Ellis v. State, 56 Texas Cr. Rep. 14, 117 S.W. 978, and Neyland v. State, 187 S.W. 196, that a conviction for vagrancy was inadmissible for purposes of impeachment because the offense did not involve moral turpitude.

In McIntosh v. State, 91 Texas Cr. Rep. 392, 239 S.W. 622, the rule thus broadly stated in Ellis, supra, is modified to the extent that *if it be shown that the vagrancy conviction or arrest was for that form of vagrancy consisting of being a common prostitute or inmate of a house of prostitution, it will be held to involve moral turpitude.*

This court held in Steele v. State, 94 Texas Cr. Rep. 345, 251 S.W. 222, page 224, that the rule laid down in the McIntosh case, supra, does not hold good as to vagrancy convictions dependent upon proof of things other than prostitution. In the Steele case, the appellant had taken the stand in his own behalf and he was asked upon cross-examination if he had not been arrested and had not paid twenty-five or thirty fines within the last two years for vagrancy under assumed names. When the appellant denied that he had, an officer was then allowed to testify, over objection that the offenses inquired about did not involve moral turpitude, that he had arrested appellant or had been in company with others who arrested appellant on three or four occasions, and that he had pleaded guilty to vagrancy under an assumed name. This court then said:

"Examining the impeaching testimony of the officer in the matter now before us, it is not made to appear that the vagrancy to which appellant pleaded guilty, as asserted by the officer, could be admissible as impeaching testimony."

Steele's case was reversed, the court stating: "We are unable to say that the error was not of a character prejudicial."

We are aware of the well-settled rule that, in criminal cases, a witness may be impeached by a showing that, at some time previously, he had been convicted of a felony or *offense involving moral turpitude*. 45 Texas Jur., p. 101, sec. 240. We are not aware, however, of any rule that would allow a witness to be impeached, as was done by the state in the case at bar.

We feel that the learned trial judge fell into error in admitting the various prior judgments of convictions without evidence to establish that appellant and his witness were the defendants therein and without first requiring the state to establish the subsection of the vagrancy statute under which they were had, in order to properly establish these offenses as ones properly coming within the terms of the classification of offenses involving moral turpitude.

Although the appellant's counsel never at any time made a specific objection to the admissibility of the prior convictions for the offenses of vagrancy because they had not been shown to be ones involving moral turpitude, we think that the objections which were made to the prior judgments were sufficient to apprise the court of their admissibility. Fowler v. State, 352 S.W. 2d 838, syl. 5, pp. 840, 841; Xanthull v. State, 172 Texas Cr. Rep. 481, 358 S.W. 2d 631.

In view of our disposition of this case, we find it unnecessary to express an opinion upon the argument complained of by state's counsel. Upon another trial, this incident will doubtless not arise.

From what we have said, we feel that the effectiveness of the testimony of the appellant and the witness Coleman and its credibility was substantially lessened and that the appellant did suffer prejudicial harm by the admission of the various judgments showing prior convictions.

The judgment is reversed and the cause is remanded.